# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHARMERICA CORPORATION** | ) | **Case No. _____** |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMANDED** |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **LENA STURGEON, ELLIOT** | ) | |
| **GOTTLIEB, ADAM SHIMODA, and** | ) | |
| **CONTINUARX LLC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT FOR
## INJUNCTIVE RELIEF AND DAMAGES

Plaintiff PharMerica Corporation ("PharMerica") for its Verified Complaint against Defendants Lena Sturgeon, Elliot Gottlieb, Adam Shimoda, and ContinuaRX LLC (collectively, "Defendants") alleges as follows:

### PARTIES

1.      Plaintiff PharMerica is a Delaware corporation that is engaged in the business of providing institutional and hospital pharmacy services throughout the United States. PharMerica's principal place of business is located in Louisville, Kentucky.

2.      Upon information and belief, Defendant Lena Sturgeon ("Sturgeon") is a resident of Pennsylvania and resides at 3198 Jefferson Avenue, Washington, Pennsylvania 15301, and is a former PharMerica and Millennium Pharmacy Services, Inc. ("Millennium") executive employee.

3.      Upon information and belief, Defendant Adam Shimoda ("Shimoda") is a resident of Maryland and resides at 1491 Dockside Court, Frederick, Maryland 21701, and is a former PharMerica and Millennium employee.

4.      Upon information and belief, Defendant Elliott Gottlieb ("Gottlieb") is a resident of Maryland and resides at 11309 Hollowstone Drive, North Bethesda, Maryland 20852, and is a former PharMerica and Millennium employee.

5.      Upon information and belief, Defendant ContinuaRX LLC ("ContinuaRX") is, or soon will be, a long-term care pharmacy conducting business in Maryland with its principal place of business located at 7085 Samuel Morse Drive, Columbia, Maryland 21046.   Upon information and belief, Sturgeon intends to manage and operate ContinuaRX in order to directly compete with PharMerica using current and former PharMerica customers and employees (including Gottlieb and Shimoda), and confidential/trade secret information of PharMerica. ContinuaRX has applied for a pharmacy license (No. P07401) and pharmacy waiver (No. PW0499) to operate an institutional pharmacy which are currently pending with the Maryland Board of Pharmacy.   ContinuaRX has further applied for and received a National Provider Identifier of 1477008068 (a 10-digit numeric identifier that must be used on claim forms submitted to payors by individual and organization health care providers who meet the definition of a "covered entity" under the Health Insurance Portability and Accountability Act (HIPAA)) evidencing its immediate intent to begin operations.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.

7.      Subject matter jurisdiction is further proper in this court pursuant to 28 U.S.C. § 1331 as this action also arises under 18 U.S.C. § 1832(c), the Defend Trade Secrets Act of

2

2016, which  provides United States District Courts with original jurisdiction of civil actions brought under this section.

8.    Personal jurisdiction and venue are proper in this Court because PharMerica has suffered, and will continue to suffer, irreparable harm in Pennsylvania through the loss of its current and prospective customers and employees targeted by Defendants and located in Pennsylvania, and Defendants are benefitting from, or will benefit from, the threatened disclosure of PharMerica's confidential and trade secret information to cause harm to PharMerica in Pennsylvania.  Moreover, Shimoda and Gottlieb executed multiple employment agreements governed by Pennsylvania law, and Sturgeon is a resident living in the Western District of Pennsylvania.

## NATURE OF THE ACTION

9.    This is an action in which PharMerica seeks temporary, preliminary, and permanent injunctive relief, in addition to damages, as a result of Defendants' misappropriation of PharMerica's trade secrets, interference with PharMerica's customer and employment relationships, and breach of non-competition, non-solicitation and non-disclosure provisions of their PharMerica employment agreements.   PharMerica's requested relief is critical given Defendants' intimate knowledge of PharMerica's customer relationships, client lists, pricing information, margins, marketing strategies, and business practices, and Defendants' intent to start a competing pharmacy, ContinuaRX, using PharMerica's employees, confidential and trade secret information, and customers it acquired through an approximately $40 million acquisition in 2014.

## DEFENDANTS' EMPLOYMENT WITH MILLENNIUM

10.    Sturgeon was previously employed by Millennium as an Executive Vice President.  Millennium, a then competitor of PharMerica, was engaged in the business of

3

providing institutional and hospital pharmacy services.   As an Executive Vice President, Sturgeon was responsible for client retention, managing clinical teams that oversee the transition of new accounts, managing a team of account managers, managing Millennium's accounts in the Mid-Atlantic Region, overseeing the sales and customer service departments, and assisting with preparation of the annual budget.   Consequently, Ms. Sturgeon has intimate knowledge and familiarity with Millennium's billing practices and customer information, strategies, and had access to documents related to client billing.

11.     On December 10, 2010, Gottlieb accepted an employment offer from Millennium to work as a Regional Manager Consulting Pharmacist.   In this role, Gottlieb was charged with managing regional groups of pharmacists in addition to working as a consultant pharmacist that worked directly with Millennium's customers to ensure that drugs were administered properly and the efficiency of Millennium's pharmacy services.

12.     On April 20, 2011, Shimoda accepted an employment offer from Millennium to work as a Pharmacy Technician.   On August 19, 2014, Shimoda was promoted to an Assistant General Manager.   In this role, Shimoda was responsible for day-to-day operations and workflow of Millennium's Columbia, Maryland pharmacy as well as the supervision of other pharmacists and pharmacy technicians, and customer satisfaction with Millennium's services.   Accordingly, Shimoda was the primary point of contact for Millennium's customers to discuss and correct any customer issues or complaints.

13.     Consequently, through their employment with Millennium, Gottlieb and/or Sturgeon and/or Shimoda built strong customer relationships with Millennium's customer base, and obtained intimate knowledge of Millennium's client lists, pricing information, margins, marketing strategies, business practices, and other confidential and trade secret information.

4

## GOTTLIEB'S AND SHIMODA'S EMPLOYMENT AGREEMENTS
## WITH MILLENNIUM

14.     To protect Millennium's confidential and trade secret information, Gottlieb and Shimoda executed certain employment agreements.

15.     As part of Gottlieb's employment with Millennium, he accepted the terms of a written offer (the "Offer") on December 10, 2010.[1]  (A true and accurate copy the written Offer is attached as Exhibit A).  That written Offer required Gottlieb to not disclose Millennium's confidential or trade secret information (Offer at ¶ 5), to not solicit "any person who is a customer, patient, or supplier" of Millennium (*Id.* at ¶ 6), and to not solicit any of Millennium's employees for a period of one year following his termination of employment (*Id.* at ¶ 7).

16.     On April 20, 2011, Shimoda executed an employment agreement (the "Shimoda Millennium Employment Agreement")[2] as part of his employment with Millennium.  Paragraph 5 of that agreement provides:

> As a condition of your employment you agree that . . . you will not at any time, in any form or manner, either directly or indirectly, disclose or communicate to any person, corporation, or organization not otherwise entitled to receive such information in our best interest any information concerning our business, or that of affiliates, including without limitation, the names of our patients or employees, the fees we obtain or have obtained for our services, financial information, computer or software programs, marketing plans, pricing information, the existence of any discussions or facts relating thereto, our manner of operation or our plans, processes, or data of any kind.

(A true and accurate copy of Shimoda's Millennium Employment Agreement is attached as Exhibit B).

17.     Shimoda further agreed, through execution of the Millennium Employment Agreement, to "not solicit or otherwise seek to induce (directly or indirectly) any person who is a

---

[1] Paragraph 10 of the Millennium Offer provides that it will be governed by Pennsylvania law.

[2] Paragraph 10 of the Millennium Employment Agreement provides that it will be governed by Pennsylvania law.

customer, patient, or supplies of us or any of our affiliates to terminate his, her or its relationship

with use or any of our affiliates" and "for a period of one year after leaving our employ for any

reason, you will not directly or indirectly encourage, recruit, or solicit . . . any of our employees,

or those of our affiliates, to leave our collective employer or to join you at your new employer . .

. ." (*Id.* at ¶¶ 6-7).

18.    On April 22 and January 2, 2011, Shimoda and Gottlieb respectively executed a

Confidentiality Agreement with Millennium which provides:  "As an employee of [Millennium],

I will not, at any time, disclose or use, either during or subsequent to my employment, any

information, knowledge or confidential material relating to the operation of [Millennium] or its

facilities and their residents."  (True and accurate copies of Shimoda's and Gottlieb's executed

Confidentiality Agreements are attached as Exhibits C and D, respectively).

19.    On April 1, 2013, Gottlieb further agreed to a Confidentiality, Copyright and

Other Intellectual Property Assignment and Restrictive Covenant Agreement with Millennium.[3]

Paragraph 3(c) of that Agreement provides in relevant part that "Employee agrees that during the

term of Employee's relationship with the Company and thereafter, Employee will not, directly or

indirectly, in any capacity, use or disclose, or cause to be used or disclosed, any Confidential

Information," as that term is further defined therein.  (A true and accurate copy of the

Confidentiality, Copyright and Other Intellectual Property Assignment and Restrictive Covenant

Agreement with Millennium is attached as Exhibit E).

20.    Gottlieb further agreed that both during his employment and for a period of

twelve months thereafter, he would not:

(i)  Participate or engage in, or provide assistance to any person that engages in,
directly or indirectly, the business of creating or distributing any Competing

---

[3] Paragraph 15 of the Confidentiality, Copyright and Other Intellectual Property Assignment and Restrictive Covenant Agreement provides that it is governed by Pennsylvania law.

Product (as defined below) for purchase, lease, license, or use anywhere in the Restricted Area (as defined below); or . . .

(iii)  Solicit any Customer of Company with whom Employee has had or will have had significant and repeated communication at any time during the preceding 12-month period . . . ; or

(iv)  Solicit, hire, recruit, employ, or retain any person or entity who is employed by or has a contractual or consulting relationship with Company, or induce or encourage any person or entity who is employed by or has a contract or consulting relationship with Company to terminate such employment, contractual, or consulting relationship . . . .; or

(v)  Use Confidential Information as defined above to assist in the provision of computer software design, development, code writing, or programming services, devising sales, marketing, or cost containment strategies, or the solicitation of customers, employees, or contracts of the Company . . . .

(*Id.* at ¶ 5(b)).

21.    On June 5, 2013, Gottlieb further agreed to the terms of a Protection of Interest and Non-Disclosure Agreement with Millennium.[4]  Under that Agreement, Gottlieb agreed to "not, directly or indirectly, use, disseminate, disclose, divulge, communicate, lecture upon, or publish articles containing any Confidential Information (including but not limited to that described above) either during or after your employment by Millennium."  (A true and accurate copy of  the Protection of Interest and Non-Disclosure Agreement is attached as Exhibit F).

22.    Gottlieb further agreed that "for so long as you are employed by Millennium and for twelve (12) months thereafter, you will not directly or indirectly, on behalf of yourself or any other individual or entity:

(i) employ, solicit, recruit, contract with, induce, influence or advise, or directly or indirectly cause the employment, solicitation or recruitment of customers, employees, consultants, agents or referral source of any Millennium entity, for the purpose of engaging in a business substantially similar to the business of, or competitive with any Millennium entity . . . .

_____

[4] Paragraph V(5) of the Protection of Interest and Non-Disclosure Agreement with Millennium provides that it will be governed by Illinois Law.

(iv) engage in business for Yourself, or on behalf of or in association with any other person or entity that is in the business of providing institutional pharmacy services, pharmacy operations, and/or electronic pharmaceutical or prescription ordering technology to any person or entity or contemplating doing business in the long term care industry, including but not limited to, skilled nursing facilities assisted living facilities and/or continues care retirement communities in direct or indirect competition with the products, services or technology, as are engaged by the Company.

(*Id.* at ¶ 3(a)).

## MILLENNIUM IS ACQUIRED BY PHARMERICA

23.    On or about September 26, 2014, PharMerica acquired all of Millennium's outstanding stock, customer contracts, and employment agreements (the "Stock Purchase"). Consequently, Sturgeon, Shimoda, and Gottlieb remained subject to their employment agreements executed with Millennium described above while employed by PharMerica.

24.    As part of the Stock Purchase, Sturgeon received a cash payout of at least $69,750.00 as a management closing bonus.  PharMerica further paid the shareholders of Millennium $13,247,118.10 in addition to PharMerica paying off millions of dollars in debt owed by Millennium.

25.    Following the Stock Purchase, Sturgeon, Shimoda, and Gottlieb continued as employees of PharMerica in the same roles they had previously held with Millennium and therefore were provided PharMerica's client lists, pricing information, margins, marketing strategies, business practices, and other confidential and trade secret information.

26.    Upon information and belief, Shimoda attended yearly PharMerica National Pharmacy Director's meetings, and/or received information created for such meetings, where PharMerica's strategies and operations were shared only with certain PharMerica employees.

27.    In her capacity as Executive Vice President, Chief Clinical and Relationship Officer for PharMerica, Sturgeon was responsible for assisting with the integration of

Millennium into the PharMerica operating system, which included client retention, managing clinical teams that oversee the transition of new accounts, managing a team of account managers, integrating Millennium's proprietary MPSRx eMAR system, managing PharMerica's accounts in the Mid-Atlantic Region acquired from Millennium, and received information relating to customer sales and customer service.

28.     In her role as an Executive Vice President, Chief Clinical and Relationship Officer, Ms. Sturgeon had direct knowledge of PharMerica's billing practices and could access documents related to client billing.

29.     In her role as Executive Vice President, Chief Clinical and Relationship Officer, Ms. Sturgeon also had direct knowledge of PharMerica's operational issues, particularly during the post-acquisition of Millennium.

30.     Therefore, Sturgeon, Shimoda, and/or Gottlieb had access to and used PharMerica's confidential and proprietary pricing strategies, cost and margin information, transportation costs, bidding history, inventory, marketing strategies, technology plans, weaknesses, and future growth opportunities as part of their employment with Millennium and then again with PharMerica, that provides all of the pieces to ContinuaRX to unfairly compete against PharMerica.  This information is not available to PharMerica's competitors.

## GOTTLIEB'S AND SHIMODA'S CONTRACTUAL OBLIGATIONS TO PHARMERICA

31.     PharMerica takes reasonable steps to protect its proprietary, confidential, and trade secret information including restricting access to its facilities, providing a secure company laptop to its employees that requires a username and password to access PharMerica's electronic information, and utilizing non-competition, non-solicit, and confidentiality agreements with its employees to further protect its information.

32.     Following the Stock Purchase, Gottlieb and Shimoda agreed to the terms of a Nondisclosure and Non-Solicitation Agreement with PharMerica (the "PharMerica Employment Agreements").[5]   (True and accurate copy of Gottlieb's December 11, 2014 and Shimoda's December 15, 2014 PharMerica Employment Agreements are respectively attached as Exhibits G and H).

33.     The PharMerica Employment Agreements were designed in part to protect PharMerica's legitimate business interests including its confidential and trade secret information which the Agreements defined as:

> PharMerica has valuable confidential business information, including, but not limit PharMerica 's Customer Relationships, operating methodologies, assets, marketing strategies, information relevant to the Company's operations, business and marketing plans; financial information, and performance, financial and reimbursement policies and information; technical data, research and development; clinical tools, programs, processes and protocols; information concerning employees, consultants, contractors, and prospective employees; the identity of existing and potential contracts, customers, vendors, suppliers, and business opportunities; confidential and proprietary materials, records and documents; and information, procedures, systems and techniques used by the Company in evaluating its operations and the quality of its financial and clinical performance, which PharMerica has acquired or received from other parties, including Employee, in confidence ("PharMerica's Confidential Information");
>
> PharMerica has trade secrets, including, but not limited to, programs, devices, methods, techniques, and processes, that derive independent economic value from not being generally known and that are the subject of reasonable efforts to maintain their secrecy ("PharMerica's Trade Secrets").

(Exhibits G and H, Recitals, p. 1).

34.     Under the terms of the PharMerica Employment Agreements, Gottlieb and Shimoda agreed to not "divulge, reveal or communicate PharMerica's Confidential Information or Trade Secrets to any person, firm, corporation or entity whatsoever, or use PharMerica's

---

[5] Paragraph 10 of the PharMerica Employment Agreements provide that "this Agreement shall be construed in accordance with the laws of the State of Kentucky . . . ."

Confidential Information or Trade Secrets for Employee's own benefit or for the benefit of others."   (*Id.* at ¶ 2(a)).

35.     Gottlieb and Shimoda further agreed, upon termination, to "deliver to PharMerica all materials and property of PharMerica in Employee's possession, including, but not limited to PharMerica's Confidential Information and Trade Secrets."  (*Id.*).

36.     Gottlieb and Shimoda further agreed that, both during their employment and for a period of twelve months following the termination of their employment with PharMerica, to not "directly or indirectly, divert business from PharMerica or solicit, accept or procure business from . . . any customer of PharMerica," "interfere, in any manner, with PharMerica's Customer Relationships," or "directly or indirectly, solicit for employment, employ or otherwise engage the services of for himself or on behalf of any other person or entity, any individual who was employed by PharMerica at the time of Employee's voluntary or involuntary separation from PharMerica."  (*Id.* at ¶ 2(b)-(c)).

37.     On December 11 and 15, 2014, Gottlieb and Shimoda respectively  also agreed to a Conflict of Interest Statement with PharMerica which provides that he would not engage in "the unauthorized use or disclosure of corporate trade secrets, confidential information or proprietary information" or "conduct that is disloyal, disruptive, competitive or damaging to [PharMerica] . . . ."  (True and accurate copies of Gottlieb's and Shimoda's PharMerica Conflict of Interest Statements and related Acknowledgements are respectively attached as Exhibits I and J).

38.     Gottlieb and Shimoda respectively further agreed to a Confidentiality Agreement[6] with PharMerica which provides that:

---

[6] Paragraph 5 of the Confidentiality Agreement provides that it is governed by Kentucky law.

> While in the employ of PharMerica and after any termination of employment, regardless of the reasons for the termination, Employee . . . agrees that he/she shall not use, disseminate, disclose, or publish, directly or indirectly,  . . . all proprietary information concerning the Company's operating methodologies and clinical protocols, referral sources, assets, marketing strategies, financial and clinical matters, including all procedures, systems and techniques used by the Company in evaluating its operations and the quality of its financial and clinical performance, all financial and clinical software, data and pricing information relevant to the Company's operations and all business and marketing plans and financial projections."

(True and accurate copies of Shimoda's and Gottlieb's Confidentiality Agreements are respectively attached as Exhibits K and L).

39.     The agreements that Sturgeon, Shimoda, and Gottlieb executed with Millennium and PharMerica are necessary, reasonable, and narrowly tailored to ensure the protection of PharMerica's trade secret and confidential information (including the trade secret and confidential information that PharMerica acquired from Millennium), customer relationships, and the significant investment required to train and educate its employees.

40.     Sturgeon, Shimoda, and Gottlieb were also subject to the PharMerica Employee Handbook (the "Handbook"), which required Sturgeon, Shimoda, and Gottlieb to protect PharMerica's confidential information:

> I am aware that during the course of my employment with PharMerica confidential information will be made available to me, including but not limited to product designs, marketing strategies, business plans, financial data, drug formularies, client lists or contract information, information about clients that allows PharMerica to service them better, pricing policies and other related information. I understand that this information is proprietary and critical to the success of PharMerica and must not be given out or used  outside of PharMerica premises or with noncompany employees. In the event of separation of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with, or for the benefit of, any other individual or company.

(Handbook, p. 58).  (A true and accurate copy of relevant portions of the PharMerica Employee Handbook are attached as Exhibit M).

41.     The Handbook further provides that "your employment with PharMerica assumes an obligation to maintain confidentiality of client, personnel, financial and operational information" and Sturgeon, Shimoda, and Gottlieb were further prohibited from "[u]sing confidential or PharMerica proprietary information for personal gain or the benefit of others." (*Id.* at pp. 50-51).

42.     On December 8, 2014, Shimoda executed a Receipt and Acknowledgement of the Handbook.  On December 9, 2014, Gottlieb executed a Receipt and Acknowledgement of the Handbook.  (True and accurate copies of the Receipts and Acknowledgments are attached as Exhibits N & O).

43.     Sturgeon, Shimoda, and Gottlieb were also subject to the PharMerica Corporation Code of Business Conduct and Ethics which required all PharMerica employees to "hold in strictest confidence and shall not, directly or indirectly, in any manner, disclose to any person or entity, for use for the benefit of himself/herself or others, any information deemed confidential by the Company . . .  . No one shall use knowledge of the Company's confidential dealings, learned through his/her association with the company, for personal gain or advantage, nor shall anyone disclose such information to enable others to profit from it. . . . If your employment . . . with the Company ends for any reason, you are still bound to protect the confidentiality of information you obtained while you were a Company associate."  On December 11 and 15, 2014, Gottlieb and Shimoda respectively executed the Acknowledgement of Receipt and Understanding of the Code of Ethics and Business Conduct.  (True and accurate copies of relevant portions from PharMerica's Code of Ethics and Business Conduct and related Acknowledgments are attached as Exhibits P, Q, & R).

## GOTTLIEB AND SHIMODA RESIGN FROM PHARMERICA TO JOIN CONTINUARX, A COMPETING PHARMACY OPERATED BY STURGEON, IN BREACH OF THEIR EMPLOYMENT AGREEMENTS

44.     The pharmacy services industry in general is highly competitive, especially within the institutional and hospital services segment.  As a result, pharmacy services companies like PharMerica compete aggressively for many of the same customers as its competitors.  Customer relationships and pricing are critical to maintaining market share and viability.

45.     Sturgeon resigned from PharMerica on May 15, 2015.  Upon information and belief, Sturgeon is now systematically targeting PharMerica's employees (such as Gottlieb and Shimoda) to assist with her new competing pharmacy services company in order to unfairly compete with PharMerica, and has just hired, or will hire, Gottlieb and Shimoda to solicit PharMerica's customers and employees, divulge PharMerica's confidential and trade secret information, and assist in Sturgeon's new competing venture.

46.     Indeed, on August 2, 2016, Gottlieb was asked whether another PharMerica employee was also resigning from PharMerica and "going with the new company (Continuum??)"  (A true and accurate copy of the August 2 email is attached as Exhibit S).

47.     Gottlieb resigned from PharMerica on August 4, 2016.  Upon information and belief, Gottlieb has agreed to assist Sturgeon and Shimoda in forming a competing pharmacy services company (ContinuaRX) using former Millennium employees now or previously employed by PharMerica, former Millennium customers now or previously serviced by PharMerica, current and former customers of PharMerica, and will likely utilize confidential/trade secret information belonging to Millennium and PharMerica to compete directly against PharMerica

48.     For example, prior to his resignation, on July 8, 2016, Gottlieb sent a blast email to all "MPS Consultant Pharmacists" providing his personal email address and personal phone number.  While Gottlieb recognized his duty to not solicit PharMerica's employees, his intent was to in fact solicit PharMerica's consultant pharmacists on behalf of Sturgeon's new competing pharmacy services company. (A true and accurate copy of the email is attached as Exhibit T).

49.     On August 1, 2016, Gottlieb exchanged emails with a current PharMerica customer, Integrace, and provided his personal contact information and stated that "if you have any questions about anything regarding my consulting at any of the homes, please feel free to contact me." (A true and accurate copy of the email is attached as Exhibit U).

50.     On August 3, 2016, Gottlieb contacted another customer of PharMerica and stated that he would be joining "a new pharmacy that will be starting up in the next couple months." (A true and accurate copy of the email is attached as Exhibit V).

51.     Upon information and belief, Gottlieb's statements were made in an effort to solicit and divert PharMerica's customers to Sturgeon's new competing pharmacy services company.

52.     Upon information and belief, during his last months of employment at PharMerica, Gottlieb also used his company-owned computer to access and misappropriate PharMerica's confidential and trade secret documents, which were unrelated to his job responsibilities or any project that he was working on, in order to secure information to assist with Sturgeon's new competing pharmacy services company.

53.     For example, Gottlieb accessed confidential and trade secret documents relating to PharMerica current customers and then sent this information to his personal email address on

July 26, 2016 at approximately 11:30 p.m. (True and accurate copies of the emails are collectively attached as Exhibits W).

54.     Approximately thirty minutes later, Gottlieb sent to his personal email address a compilation of medications provided by PharMerica, and the accompanying storage recommendations and notes that Millennium and PharMerica had created. Gottlieb further sent to his personal email address various forms and charts belonging to PharMerica that reasonably could only be used to assist with Sturgeon's new competing pharmacy services company. (True and accurate copies of the emails are collectively attached as Exhibits X).

55.     On August 3, 2016 at 2:47 a.m., Gottlieb sent to his personal email address a monthly summary for one of PharMerica's customers that included proprietary information relating to recommendations to better serve this customer. (A true and accurate copy of the email is attached as Exhibit Y).

56.     Perhaps most alarming, on August 3, 2016, the day before his resignation, a forensic analysis of his work computer revealed that Gottlieb plugged a SanDisk Prod Cruzer Glide (s/n 4C530001040717103242&0) into his work computer. Although Gottlieb was required to immediately return his work computer and portable electronic devices upon his resignation, he did not return PharMerica's electronic equipment until August 16, 2016 – 12 days after his resignation.

57.     A review of the SanDisk device revealed that it is chalked full of PharMerica customer information including: "ESG_Contacts.CSV.lnk" and documents containing confidential and proprietary information relating to current PharMerica customers serviced by Gottlieb (that he also serviced while employed by Millennium) including contact information,

the current state of affairs at each customer location, issues and challenges with each customer location, and what drugs the patients are prescribed at each customer location.

58.     This information can be used to target PharMerica's customers and undercut PharMerica's pricing.

59.     Upon information and belief, Defendants intend to target these PharMerica customers (among other PharMerica customers) as part of their competing ContinuaRX pharmacy using the contact information and proprietary, confidential, and trade secret customer information belonging to PharMerica that Gottlieb copied onto the USB device.

60.     In fact, on August 4, 2016 after 5 p.m. EST (the day of Gottlieb's resignation), the forensic analysis of his work computer further revealed that he used his work computer to access multiple documents relating to one of PharMerica's customers without any reasonable basis to do so and _after_ he had already provided PharMerica with his resignation.  And, on August 1 through August 3, he further accessed documents relating to current PharMerica customers that he serviced without any reasonable basis to do so and knowing he would be resigning in just a matter of days.

61.     The forensic analysis further revealed that in the days leading up to his resignation, Gottlieb was accessing and viewing PharMerica forms and policies that could only be used to start a competing pharmacy services company.

62.     For example, Gottlieb accessed documents titled "PharMerica - Medication Room Inspection and Med Pass Observation.xls.lnk" on August 4 and "PharMerica - Medication Station Inspection.xls.lnk" on August 3.  These documents are used in PharMerica's consulting with its customers, and would allow ContinuaRX to immediately begin servicing customers without having to spend the time or resources developing these documents for themselves.

17

63.     On July 29, 2016, Shimoda resigned from PharMerica.   Upon information and belief, Shimoda has agreed, or will agree, to assist Sturgeon and Gottlieb in forming ContinuaRX using former Millennium employees now or previously employed by PharMerica, will likely solicit former Millennium customers now or previously serviced by PharMerica, current and former customers of PharMerica, and will likely use confidential/trade secret information belonging to Millennium and PharMerica to further the business interests of a competing pharmacy.

64.     It is inconceivable that Gottlieb or Shimoda could work for a competing pharmacy services company, including but not limited to ContinuaRX, and not solicit PharMerica's customers or use or disclose PharMerica's proprietary, non-public, trade secret information to the detriment of PharMerica. Therefore, if permitted to join Sturgeon's competing pharmacy services company, Gottlieb and Shimoda will inevitably use the customer information, pricing and cost information, training and education, and have an intimate knowledge of PharMerica's proprietary information that they obtained while working at PharMerica and Millennium for the benefit of a competing pharmacy company that will cause immediate and irreparable harm to PharMerica.

65.     Therefore, immediate, temporary, preliminary and permanent injunctive relief is necessary.

## COUNT I

**Breach of Confidentiality Provisions of Employment Agreements**
**Gottlieb and Shimoda**
**(Injunctive Relief and Damages)**

66.     PharMerica incorporates by reference its allegations contained in paragraphs 1 through 65 above as if fully rewritten herein.

18

67.     By executing the employment agreements described above, Gottlieb and Shimoda agreed and promised to maintain the confidentiality of PharMerica's Confidential Information and Trade Secrets, as those term are defined therein and by the common law.

68.     Gottlieb and Shimoda have breached their employment agreements described above through their current and/or threatened employment with a competing pharmacy operated by Sturgeon that will inevitably result in the disclosure of PharMerica's confidential information and trade secrets.

69.     Gottlieb is in further breach of his employment agreements because he sent PharMerica's confidential information and trade secrets to his personal email address in the days leading up to his resignation that have not been returned to PharMerica.

70.     Consequently, Gottlieb's and Shimoda's breaches of the confidentiality provisions of their employment agreements have caused, and will cause, immediate and irreparable harm to PharMerica.

71.     PharMerica performed its obligations and satisfied all conditions precedent to the employment agreements.

72.     Unless Gottlieb and Shimoda are enjoined from further breaches of the confidentiality provisions of their employment agreements, PharMerica will be further immediately and irreparably harmed by:

(a)     The loss of its goodwill;

(b)     Damage to its organizational stability;

(c)     Use and disclosure by Gottlieb and Shimoda of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

(d)     The loss of confidence and trust of customers and loss of business reputation; and

19

(e)     Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

73.     PharMerica has no adequate remedy at law.

74.     The confidentiality provisions of the employment agreements are not injurious to the public welfare.  In fact, the issuance of an injunction would promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer relationships, as well as safeguarding its confidential, proprietary and/or trade secret information and preventing unethical conduct.

75.     Gottlieb and Shimoda acknowledged PharMerica's right to injunctive relief for violations of their restrictive covenants in the PharMerica Employment Agreements.  (Exhibits G and H, ¶ 2 (d)).

76.     Therefore, PharMerica is entitled to injunctive relief against further breaches of the PharMerica Employment Agreements as described above.

77.     Gottlieb's and Shimoda's breach of their employment agreements has also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships, unjust enrichment, and/or a reasonable royalty, in an amount to be determined at trial.

78.     In addition, paragraph 11 of their PharMerica Employment Agreements require Gottlieb and Shimoda to reimburse PharMerica for its attorney's fees and costs incurred in enforcing their PharMerica Employment Agreements.  Gottlieb's and Shimoda's breach of contract has and will proximately cause PharMerica to incur attorney's fees and costs in an amount to be determined by this Court.

## COUNT II

**Breach of Non-Competition Provisions of Employment Agreements**
**Gottlieb and Shimoda**
**(Injunctive Relief and Damages)**

79.     PharMerica incorporates by reference its allegations contained in paragraphs 1 through 78 above as if fully rewritten herein.

80.     Gottlieb agreed to a Confidentiality, Copyright and Other Intellectual Property Assignment and Restrictive Covenant Agreement with Millennium which provides that both during his employment and for a period of twelve months thereafter, he would not:

> (i)  Participate or engage in, or provide assistance to any person that engages in, directly or indirectly, the business of creating or distributing any Competing Product (as defined below) for purchase, lease, license, or use anywhere in the Restricted Area (as defined below); or . . .

(Exhibit E at ¶ 5(b)).

81.     Gottlieb further agreed, by executing the Protection of Interest and Non-Disclosure Agreement with Millennium, that "for so long as you are employed by Millennium and for twelve (12) months thereafter, you will not directly or indirectly, on behalf of yourself or any other individual or entity:

> (i) employ, solicit, recruit, contract with, induce, influence or advise, or directly or indirectly cause the employment, solicitation or recruitment of customers, employees, consultants, agents or referral source of any Millennium entity, for the purpose of engaging in a business substantially similar to the business of, or competitive with any Millennium entity . . . .

> (iv) engage in business for Yourself, or on behalf of or in association with any other person or entity that is in the business of providing institutional pharmacy services, pharmacy operations, and/or electronic pharmaceutical or prescription ordering technology to any person or entity or contemplating doing business in the long term care industry, including but not limited to, skilled nursing facilities assisted living facilities and/or continues care retirement communities in direct or indirect competition with the products, services or technology, as are engaged by the Company.

21

(*Id.* at ¶ 3(a)).

82.     By executing the PharMerica Employment Agreements described above, Gottlieb and Shimoda further agreed that they would not, both during their employment with PharMerica and for a period of 12 months following their resignation from PharMerica, "directly or indirectly, divert business from PharMerica or solicit, accept or procure business from . . . any customer of PharMerica," "interfere, in any manner, with PharMerica's Customer Relationships," or "directly or indirectly, solicit for employment, employ or otherwise engage the services of for himself or on behalf of any other person or entity, any individual who was employed by PharMerica at the time of Employee's voluntary or involuntary separation from PharMerica."  (Exhibits G and H , ¶¶ 2(b)-(c)).

83.     Gottlieb and Shimoda have breached the non-competition provisions of their employment agreements described above through their current and/or threatened employment with ContinuaRX that will inevitably result in the solicitation of PharMerica's customers and employees, interference with PharMerica's Customer Relationships, and the diversion of PharMerica's business for the benefit of a competing pharmacy.

84.     Gottlieb is in further breach of the non-competition provisions of his PharMerica Employment Agreement by soliciting PharMerica employees and customers, and attempting to divert PharMerica's customers to a new competing pharmacy prior to expiration of the non-competition period. (Exhibits S, T, U, and V).

85.     PharMerica performed its obligations and satisfied all conditions precedent to the PharMerica Employment Agreements.

86.     Unless Gottlieb and Shimoda are enjoined from further breaches of the non-competition provisions of their employment agreements, PharMerica will be further immediately and irreparably harmed by:

(a)     The loss of its goodwill;

(b)     Damage to its organizational stability;

(c)     Use and disclosure by Gottlieb and Shimoda of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

(d)     The loss of confidence and trust of customers and loss of business reputation; and

(e)     Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

87.     PharMerica has no adequate remedy at law.

88.     The non-competition provisions of the employment agreements are not injurious to the public welfare.  In fact, the issuance of an injunction would promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer relationships, as well as safeguarding its confidential, proprietary and/or trade secret information and preventing unethical conduct.

89.     Gottlieb and Shimoda acknowledged PharMerica's right to injunctive relief for violations of their restrictive covenants in the PharMerica Employment Agreements.  (Exhibits G and H, ¶ 2(d)).

90.     Therefore, PharMerica is entitled to injunctive relief against further breaches of the PharMerica Employment Agreements as described above.

91.     Gottlieb's and Shimoda's breaches of their employment agreements has also proximately caused and/or will continue to cause substantial damage to PharMerica, including,

but not limited to, lost profits and loss of goodwill and damage to business relationships, unjust enrichment, and/or a reasonable royalty, in an amount to be determined at trial.

92.     In addition, paragraph 11 of their PharMerica Employment Agreements require Gottlieb and Shimoda to reimburse PharMerica for its attorney's fees and costs incurred in enforcing the contract. Gottlieb's and Shimoda's breach of contract has and will proximately cause PharMerica to incur attorney's fees and costs necessary to enforce the terms of the PharMerica Employment Agreements in an amount to be determined by this Court.

## COUNT III

**Breach of Non-Solicitation Provisions of Employment Agreements**
**Gottlieb and Shimoda**
**(Injunctive Relief and Damages)**

93.     PharMerica incorporates by reference its allegations contained in paragraphs 1 through 92 above as if fully rewritten herein.

94.     By executing the PharMerica Employment Agreements described above, Gottlieb and Shimoda agreed that they would not, both during their employment with PharMerica and for a period of 12 months following their resignation from PharMerica, "directly or indirectly, divert business from PharMerica or solicit, accept or procure business from . . . any customer of PharMerica," "interfere, in any manner, with PharMerica's Customer Relationships," or "directly or indirectly, solicit for employment, employ or otherwise engage the services of for himself or on behalf of any other person or entity, any individual who was employed by PharMerica at the time of Employee's voluntary or involuntary separation from PharMerica."  (Exhibits G and H, ¶¶ 2(b)-(c)).

95.     Shimoda further agreed to not solicit PharMerica's customers and employees through the various employment agreements described above including, but not limited to, his Millennium Employment Agreement.

96.     Gottlieb further agreed to not solicit PharMerica's customers and employees through the various employment agreements described above including, but not limited to,  his written Offer of employment with Millennium, the Protection of Interest and Non-Disclosure Agreement with Millennium, and the Confidentiality, Copyright and Other Intellectual Property Assignment and Restrictive Covenant Agreement with Millennium.

97.     Gottlieb and Shimoda have breached the non-solicitation provisions of their employment agreements described above through their current and/or threatened employment with a competing pharmacy operated by Sturgeon that will inevitably result in the solicitation of PharMerica's customers and employees, interference with PharMerica's Customer Relationships, and the diversion of PharMerica's business for the benefit of a competing pharmacy.

98.     Gottlieb is in further breach of his PharMerica Employment Agreement by soliciting PharMerica employees and customers, and attempting to divert PharMerica's customers to a new competing pharmacy prior to expiration of the non-competition period. (Exhibits S, T, U, and V).

99.     PharMerica performed its obligations and satisfied all conditions precedent to the employment agreements described above.

100.    Unless Gottlieb and Shimoda are enjoined from further breaches of the non-solicitation provisions of their employment agreements, PharMerica will be further immediately and irreparably harmed by:

(a)     The loss of its goodwill;

(b)     Damage to its organizational stability;

25

(c)     Use and disclosure by Gottlieb and Shimoda of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

(d)     The loss of confidence and trust of customers and loss of business reputation; and

(e)     Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

101.    PharMerica has no adequate remedy at law.

102.    The non-solicitation provisions of the employment agreements are not injurious to the public welfare.  In fact, the issuance of an injunction would promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer relationships, as well as safeguarding its confidential, proprietary and/or trade secret information and preventing unethical conduct.

103.    Gottlieb and Shimoda acknowledged PharMerica's right to injunctive relief for violations of their restrictive covenants in the PharMerica Employment Agreements.  (Exhibits G and H, ¶ 2(d)).

104.    Therefore, PharMerica is entitled to injunctive relief against further breaches of the PharMerica Employment Agreements as described above.

105.    Gottlieb's and Shimoda's breaches of their employment agreements has also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships, unjust enrichment, and/or a reasonable royalty, in an amount to be determined at trial.

106.    In addition, paragraph 11 of their PharMerica Employment Agreements require Gottlieb and Shimoda to reimburse PharMerica for its attorney's fees and costs incurred in enforcing the contract. Gottlieb's and Shimoda's breach of contract has and will proximately

cause PharMerica to incur attorney's fees and costs necessary to enforce the terms of the PharMerica Employment Agreements in an amount to be determined by this Court.

## COUNT IV

### Threatened Misappropriation of Trade Secrets
### Gottlieb, Shimoda, Sturgeon and ContinuaRX (Injunctive Relief and Damages Under Pennsylvania Uniform Trade Secrets Act)

107.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 106 above as if fully rewritten herein

108.    Pursuant to the Pennsylvania Uniform Trade Secret Act ("PUTSA") this Court may act in equity to enjoin actual or threatened misappropriation of trade secrets.

109.    Gottlieb and Shimoda possess valuable trade secrets and confidential and proprietary business information relating to PharMerica's business and operations, and were provided access to trade secret and confidential information that is protected by PUTSA while working for Millennium and then PharMerica, including, but not limited to, PharMerica's service methods, processes, capabilities, strengths and weaknesses, market opportunities, marketing strategies, prospective and current customers, customer preferences, cost and pricing information, and business strategies, among other confidential, proprietary and trade secret information defined in the PharMerica Employment Agreements.

110.    Upon information and belief, Gottlieb has further misappropriated PharMerica's trade secrets by sending such information to his personal email address in the days leading up to his resignation from PharMerica that have not been returned to PharMerica. (Exhibits W, X, and Y).

111.    PharMerica has spent significant time and money developing its trade secrets and takes reasonable measures under the circumstances to maintain the confidentiality of its trade secrets.

112.    PharMerica derives economic value from trade secrets described herein because they are not generally known to, and not readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use.

113.    PharMerica's trade secrets are subject to an imminent and threatened misappropriation (by use, if not also disclosure) in this case because, upon information and belief, Gottlieb and Shimoda intend to work for a direct competitor in a specialized market offering similar services.  Accepting the position with Sturgeon's competing pharmacy services company, ContinuaRX, therefore creates an imminent threat that Gottlieb and Shimoda – while performing duties for Sturgeon's competing pharmacy – will disclose or use PharMerica's trade secrets.

114.    Upon information and belief, Sturgeon and/or ContinuaRX have not taken any efforts to ensure that PharMerica's trade secret information is not disclosed. To the contrary, Sturgeon and/or ContinuaRX intends to employ Gottlieb and Shimoda in a substantially similar role to the one they held with PharMerica because of the trade secret information in which they were privy to while employed by Millennium and PharMerica.

115.    Unless Defendants are enjoined from further misappropriation of PharMerica's trade secret information, PharMerica will be further immediately and irreparably harmed by:

    (a)    The loss of its goodwill;

    (b)    Damage to its organizational stability;

    (c)    Use and disclosure of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

28

(d)    The loss of confidence and trust of customers and loss of business reputation; and

(e)    Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

116.    PharMerica has no adequate remedy at law.

117.    The issuance of an injunction will promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer relationships, as well as safeguarding its trade secret information and preventing unethical conduct.

118.    Therefore, PharMerica is entitled to injunctive relief against further misappropriation of its trade secret information as described above.

119.    The actual and/or threatened misappropriation of trade secrets has also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

120.    Defendants have misappropriated or threatened to misappropriate PharMerica's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT V

**Misappropriation of Trade Secrets**
**Gottlieb, Shimoda, Sturgeon and ContinuaRX**
**(Injunctive Relief and Damages Under 18 U.S.C. § 1836, et seq.)**

121.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 120 above as if fully rewritten herein.

122.     Pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

123.     Gottlieb and Shimoda possess valuable trade secrets and confidential and proprietary business information relating to PharMerica's business and operations, and were provided access to trade secret and confidential information that is protected by the Defend Trade Secrets Act while working for Millennium and then PharMerica, including, but not limited to, PharMerica's service methods, processes, capabilities, strengths and weaknesses, market opportunities, marketing strategies, prospective and current customers, customer preferences, cost and pricing information, and business strategies, among other confidential, proprietary and trade secret information defined in the PharMerica Employment Agreements.

124.     Upon information and belief, Gottlieb has further misappropriated PharMerica's trade secrets by sending such information to his personal email address in the days leading up to his resignation that have not been returned to PharMerica.

125.     PharMerica has spent significant time and money developing its trade secrets and takes reasonable measures under the circumstances to maintain the confidentiality of its trade secrets.

126.     PharMerica derives economic value from trade secrets described herein because they are not generally known to, and not readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use.

127.     PharMerica's trade secrets are subject to an imminent and threatened misappropriation (by use, if not also disclosure) in this case because, upon information and belief, Gottlieb and Shimoda intend to work for a direct competitor in a highly technical and specialized market offering competitive services.   Accepting the position with Sturgeon's

competing pharmacy services company, ContinuaRX, therefore creates an imminent threat that Gottlieb and Shimoda – while performing her duties for Sturgeon's competing pharmacy – will disclose or use PharMerica's trade secrets.

128.    Upon information and belief, Sturgeon and/or ContinuaRX have not taken any efforts to ensure that PharMerica's trade secret information is not disclosed. To the contrary, Sturgeon and/or ContinuaRX intends to employ Gottlieb and Shimoda in a substantially similar role to the one they held with PharMerica because of the trade secret information in which they were privy to while employed by Millennium and PharMerica.

129.    Unless Defendants are enjoined from further misappropriation of PharMerica's trade secret information, PharMerica will be further immediately and irreparably harmed by:

      (a)    The loss of its goodwill;

      (b)    Damage to its organizational stability;

      (c)    Use and disclosure of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

      (d)    The loss of confidence and trust of customers and loss of business reputation; and

      (e)    Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

130.    PharMerica has no adequate remedy at law.

131.    The issuance of an injunction will promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer relationships, as well as safeguarding its trade secret information and preventing unethical conduct.

132.    Therefore, PharMerica is entitled to injunctive relief against further misappropriation of its trade secret information as described above.

31

133.    The actual and/or threatened misappropriation of trade secrets has also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

134.    Defendants have misappropriated or threatened to misappropriate PharMerica's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT VI

**Tortious Interference With Contractual and Business Relationships**
**Sturgeon, Gottlieb, Shimoda and ContinuaRX**
**(Injunctive Relief and Damages Under Pennsylvania Common Law)**

135.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 134 above as if fully rewritten herein

136.    Gottlieb and Shimoda agreed to the terms of the employment agreements described above whereby Gottlieb and Shimoda agreed to not disclose PharMerica's confidential and/or trade secret information, and, both during employment and for a period of 12 months following their resignation, to not "directly or indirectly, divert business from PharMerica or solicit, accept or procure business from . . . any customer of PharMerica," "interfere, in any manner, with PharMerica's Customer Relationships," or "directly or indirectly, solicit for employment, employ or otherwise engage the services of for himself or on behalf of any other person or entity, any individual who was employed by PharMerica at the time of Employee's voluntary or involuntary separation from PharMerica." (Exhibits G & H, ¶ 2(b)-(c)).

137.     Upon information and belief, Sturgeon and/or ContinuaRX have knowledge of Gottlieb's and Shimoda's non-competition, non-solicitation, and non-disclosure agreements with PharMerica.

138.     Upon information and belief, Sturgeon purposely and maliciously caused, or inevitably will cause, Gottlieb and Shimoda to disclose PharMerica's confidential and/or trade secret information, to solicit PharMerica's customers and employees, and to divert PharMerica's business in violation of their employment agreements.

139.     Upon information and belief, Defendants will use the confidential and/or trade secret information belonging to PharMerica to further interfere with PharMerica's business relationships and agreements with its current, former, and prospective customers.

140.     Upon information and belief, Defendants will use the confidential and/or trade secret information belonging to PharMerica to further interfere with PharMerica's business relationships and agreements with its current, former, and prospective employees.

141.     Defendants' actions are not privileged and will likely cause financial harm to PharMerica. To the contrary, Gottlieb and Shimoda are contractually prohibited from interfering with PharMerica's business and contractual relationships with its customers and employees.

142.     Unless Defendants are enjoined from further tortiously interfering with PharMerica's contractual agreements and business relationships, PharMerica will be irreparably harmed by:

(a)     The loss of its goodwill;

(b)     Damage to its organizational stability;

(c)     Use and disclosure of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

(d)     The loss of confidence and trust of customers and loss of business reputation; and

(e)     Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

143.    PharMerica has no adequate remedy at law.

144.    The issuance of an injunction will promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer and business relationships.

145.    Therefore, PharMerica is entitled to injunctive relief against further interference with PharMerica's contractual and business relationships.

146.    Defendants' actions have also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

147.    Defendants' actions were also taken knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT VII

**Unfair Competition**
**Sturgeon, Gottlieb, Shimoda and ContinuaRX**
**(Injunctive Relief and Damages Under Pennsylvania Common Law)**

148.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 147 above as if fully rewritten herein.

149.    Defendants are tortiously interfering with PharMerica's contracts and business relationships and misappropriating its confidential information and trade secrets in order to unlawfully and unfairly compete against PharMerica.

150.    In addition, Sturgeon and/or ContinuaRX are intentionally soliciting and raiding PharMerica's employees in order to staff her competing pharmacy services company with employees that have useful customer relationships, training and experience, and confidential/trade secret information belonging to PharMerica.

151.    Upon information and belief, Sturgeon and/or ContinuaRX are aware that certain employees are under contract with PharMerica and possess confidential and/or trade secret information belonging to PharMerica, but are intentionally inducing the resignation of key PharMerica employees in order to gain access to PharMerica's trade secrets and other confidential information, and to start her own competing pharmacy services company.

152.    The foregoing conduct of Defendants constitutes an unfair method of competition intended to destroy, and/or having the effect of destroying, PharMerica's competitive advantages, its business organization, its operational capacity to service their clients, its goodwill and business opportunities, and its expectancy and standing.

153.    As a direct and proximate result of Defendants' wrongful conduct described above, PharMerica has sustained and will continue to sustain immediate and irreparable harm and injury.

154.    Unless Defendants are enjoined from further unfair competition, PharMerica will be irreparably harmed by:

      (a)    The loss of its goodwill;

      (b)    Damage to its organizational stability;

(c)     Use and disclosure of PharMerica's valuable confidential and trade secret information which is solely the property of PharMerica;

(d)     The loss of confidence and trust of customers and loss of business reputation; and

(e)     Present economic loss, which is unascertainable at this time and future economic loss, which is presently incalculable.

155.    PharMerica has no adequate remedy at law.

156.    The issuance of an injunction will promote the public interest by preserving the status quo and allow PharMerica to continue its valuable customer and business relationships.

157.    Therefore, PharMerica is entitled to injunctive relief against further unfair competition at the hands of Defendants.

158.    Defendants' actions have also proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

159.    Defendants' actions were also taken knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT VIII

**Civil Conspiracy**
**Sturgeon, Gottlieb, Shimoda and ContinuaRX**
**(Damages Under Pennsylvania Common Law)**

160.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 159 above as if fully rewritten herein.

36

161.    Defendants Sturgeon, Gottlieb, and Shimoda conspired and agreed to misappropriate PharMerica's confidential and trade secret information, solicit and raid PharMerica's customers and employees, and divert business from PharMerica in order to start a competing pharmacy services company.

162.    Defendants Gottlieb and Shimoda participated in this conspiracy while still in PharMerica's employment.

163.    In furtherance of their conspiracy, Gottlieb solicited PharMerica customers and employees to inform them of a new competing pharmacy, and sent confidential and trade secret documents belonging to PharMerica to his personal email address to be used to start a competing pharmacy services company.

164.    Defendants' actions have proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

165.    Defendants' actions were also taken knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT IX

**Breach of the Duty of Loyalty**
**Sturgeon, Gottlieb, and Shimoda**
**(Damages Under Pennsylvania Common Law)**

166.    PharMerica incorporates by reference its allegations contained in paragraphs 1 through 165 above as if fully rewritten herein.

37

167.    As employees of PharMerica, Defendants owed PharMerica a fiduciary duty of loyalty which required Defendants to act in the best interests of PharMerica, even after their separation from employment with PharMerica.

168.    Upon information and belief, Sturgeon, Gottlieb and Shimoda have breached their duty of loyalty by misappropriating PharMerica's confidential and trade secret information, will solicit and raid PharMerica's customers and employees, and will divert business from PharMerica in order to start a competing pharmacy services company.

169.    In addition, while still employed by PharMerica, Gottlieb breached his duty of loyalty by soliciting PharMerica customers and employees to inform them of a new competing pharmacy, and by sending confidential and trade secret documents belonging to PharMerica to his personal email address to be used to start a competing pharmacy services company.

170.    As a former executive employee of PharMerica that was generously compensated as part of PharMerica's Stock Purchase of Millennium, Sturgeon also had a duty of loyalty to not raid or solicit PharMerica's employees and customers for the benefit of a competing pharmacy.

171.    Defendants' actions described above therefore constitutes a breach of the duty of loyalty.

172.    Defendants' breach of their duty of loyalty has proximately caused and/or will continue to cause substantial damage to PharMerica, including, but not limited to, lost profits and loss of goodwill and damage to business relationships entitling PharMerica to compensatory damages, unjust enrichment, disgorgement of profits, and/or a reasonable royalty, in an amount to be determined at trial.

173.    Defendants' actions were also taken knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

**WHEREFORE**, PharMerica Corporation respectfully requests that this Court:

A.      Grant PharMerica injunctive relief requiring Defendants to abide by the terms of Shimoda's and Gottlieb's employment agreements described above and enjoin and restrain Gottlieb and Shimoda, and all persons acting in concert with them, from directly or indirectly engaging in competition with PharMerica including restraining Gottlieb and Shimoda from becoming an employee of Sturgeon's prior to expiration of their non-competition agreement, and restraining Gottlieb and Shimoda from doing business with or soliciting any current or former PharMerica customer, vendor, or employee;

B.      Enter an Order prohibiting Defendants from using, copying, disclosing, or sharing any proprietary, confidential, or trade secret information belonging to PharMerica for any purpose, including to compete with PharMerica in any forum whatsoever, and to return all such information to PharMerica;

C.      Require that Defendants preserve, not tamper with or modify in any way, the hard drive(s) of their personal computer(s), mobile devices and telephones, thumb drives or USB devices, or any other computer(s) or external data storage device they have used in the last year;

D.      Award PharMerica all damages proximately caused by the actions of Defendants;

E.      Award PharMerica all costs and expenses associated with this action including its reasonable attorneys' fees; and

F.      Grant such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

PharMerica hereby requests a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

Respectfully submitted,

Dated:  September 27, 2016                By:  _____/s/ David J. Porter_____

David J. Porter (PA I.D. #66125)
Tiffany A. Jenca (PA I.D. #319526)
Buchanan Ingersoll & Rooney PC
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA  15219
Phone: (412) 562-1318
Fax: (412) 562-1041
david.porter@bipc.com
tiffany.jenca@bipc.com

Deborah. S. Brenneman (OH Bar # 0062113)
George B. Musekamp (OH Bar #0087060)
*PHV Applications to be filed*
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio  45202
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771
Debbie.Brenneman@thompsonhine.com
George.Musekamp@thompsonhine.com

*Attorneys for Plaintiff PharMerica*
*Corporation*