# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHARMERICA CORPORATION**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:16cv1481 |
| ) | **Electronic Filing** |
| **LENA STURGEON, ELLIOT** ) | |
| **GOTTLIEB, ADAM SHIMODA**, and ) | |
| **CONTINUARX LLC**, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

March 16, 2018

## I. INTRODUCTION

Plaintiff, PharMerica Corporation ("PharMerica") initiated this action by Complaint alleging: breach of confidentiality provisions of employment agreements, breach of non-competition provisions of employment agreements, and breach of non-solicitation provisions of employment agreements against Defendants, Elliot Gottlieb ("Gottlieb"), and Adam Shimoda ("Shimoda"); misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, tortious interference with contractual and business relationships, unfair competition, and civil conspiracy against Defendants, Gottlieb, Shimoda, Lena Sturgeon ("Sturgeon") and ContinuaRx LLC ("ContinuaRx"); and breach of the duty of loyalty against Sturgeon only[1]. The remaining Defendants, Sturgeon and ContinuaRx (collectively "Defendants") filed a Joint Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure. PharMerica has responded and the matter is now before the Court.

---

[1] By Memorandum Opinion and Order dated April 4, 2017, all claims asserted against Gottlieb and Shimoda were dismissed by this Court.

## II. STATEMENT OF THE CASE

PharMerica is a Delaware corporation headquartered in Louisville, Kentucky, and it provides institutional and hospital pharmacy services throughout the United States. Defendants' Concise Statement of Material Facts ("Def. CSMF") ¶ 10. Millennium Pharmacy Services, Inc. ("Millennium"), a former competitor of PharMerica, was acquired by PharMerica on September 26, 2014. Def. CSMF ¶ 15; Findings of Fact ("F-F") (ECF No. 53) ¶ 2.

After September 26, 2014, Sturgeon, one of the founders of Millennium, continued to service Millennium customers as an employee of PharMerica. As a supervisor with Millennium, Sturgeon was responsible for client retention, managing clinical teams that oversee the transition of new accounts, managing a team of account managers, managing Millennium's accounts in the Mid-Atlantic Region, overseeing the sales and customer service departments, and assisting with the preparation of the annual budget. Sturgeon ended her employment with PharMerica on May 15, 2015. Def. CSMF ¶ 18; PharMerica Response to Def. CSMF ("Pharm. Resp.") ¶ 18; F-F ¶ 3. Sturgeon's non-compete and non-solicitation agreements with PharMerica expired on May 15, 2016. Def. CSMF ¶ 18; Defendants' Appendix ("Def. App.") Ex. A, p. 109. Moreover, PharMerica admits that it has not provided Sturgeon with any confidential information relating to either PharMerica or Millennium since her departure from employment on May 15, 2015. Def. App. Ex. A, p. 127.

Sturgeon is the Chief Operating Officer of ContinuaRx, a start-up, long-term care pharmacy located in Columbia, Maryland. Def. CSMF ¶ 47. ContinuaRx was formed on July 5, 2016, became operational in January 2017, and provides pharmacy services to facilities and institutions with pharmaceutical needs. Def. CSMF ¶¶ 47 & 48. Neither Sturgeon nor ContinuaRx are subject to any type of contract or obligation that would restrict or prevent them

from initiating a business venture that would compete with PharMerica. Def. CSMF ¶ 51; Conclusions of Law ("C-L") (ECF No. 53) ¶ 3

Gottlieb was hired by Millennium as a Regional Manager Consulting Pharmacist on December 10, 2010. As part of his employment, and/or continuation of employment with additional compensation and/or benefits, with Millennium, Gottlieb executed certain employment agreements including: (1) Confidentiality, Copyright and other Intellectual Property Assignment, and Restrictive Covenant Agreement dated April 1, 2013; and (2) Protection of Interest and Non-Disclosure Agreement, dated June 5, 2013. F-F ¶ 5.

Shimoda was hired by Millennium as a Pharmacy Technician on April 20, 2011. On August 19, 2014, Shimoda was promoted to an Assistant General Manager, responsible for day-to-day operations and workflow of Millennium's Columbia, Maryland pharmacy, management and supervision of other pharmacists and pharmacy technicians, customer service, and reviewing and ensuring compliance with the standard operating procedures. F-F ¶ 7. Shimoda never signed an employment agreement with Millennium. F-F ¶ 8.

Following PharMerica's purchase of Millennium, Shimoda, and Gottlieb accepted employment with PharMerica and continued in the same roles they had previously held with Millennium prior to the acquisition. F-F ¶ 9. As part of his employment, Gottlieb executed a Nondisclosure and Non-Solicitation Agreement with PharMerica on December 11, 2014, which in pertinent part states:

> <u>Competition</u>. Employee acknowledges that PharMerica will suffer irreparable injury if Employee competes with PharMerica. Employee agrees that, during Employee's employment and for a period of twelve (12) months thereafter, Employee **shall not**:
>
> > (i) directly or indirectly, divert business from PharMerica or solicit, accept, or procure business from, divert the business of, or attempt to convert to other methods of using the same or similar services or products as are provided by PharMerica, any customer of PharMerica;

3

(ii) interfere, in any manner, with PharMerica's Customer Relationships;

(iii) directly or indirectly, solicit for employment, employ or otherwise engage the services of . . . an individual . . . employed by PharMerica . . .

F-F ¶ 10. Gottlieb's Nondisclosure and Non-Solicitation Agreement with PharMerica did not contain a non-competition requirement that restricted his employment with a competitor. F-F ¶ 12.

As part of his employment, Shimoda also executed a Nondisclosure and Non-Solicitation Agreement with PharMerica on December 15, 2014, which in pertinent part states:

<u>Competition</u>. Employee acknowledges that PharMerica will suffer irreparable injury if Employee competes with PharMerica. Employee agrees that, during Employee's employment and for a period of twelve (12) months thereafter, Employee **shall not**:

(i) directly or indirectly, divert business from PharMerica or solicit, accept, or procure business from, divert the business of, or attempt to convert to other methods of using the same or similar services or products as are provided by PharMerica, any customer of PharMerica;

(ii) interfere, in any manner, with PharMerica's Customer Relationships;

(iii) directly or indirectly, solicit for employment, employ or otherwise engage the services of . . . an individual . . . employed by PharMerica . . .

F-F ¶ 13. Gottlieb and Shimoda also executed Confidentiality Agreements with PharMerica which required that they not "use, disseminate, disclose or publish, directly or indirectly, any Confidential Information obtained while in PharMerica's employ," and required that they return any such material in their possession upon termination of employment with PharMerica. F-F ¶ 14.

Sturgeon contacted Gottlieb in or around June 2016, and asked him to join ContinuaRx as the head Consultant Pharmacist. Gottlieb accepted the position, resigned from PharMerica on August 4, 2016 and joined ContinuaRx on September 12, 2016. Gottlieb's role as the head

4

Consultant Pharmacist at ContinuaRx will be substantially similar to the role he held at PharMerica and Millennium. Gottlieb serviced PharMerica customers up to and including his last day of employment with PharMerica. F-F ¶¶ 19 & 20; Def. CSMF ¶ 56.

Shimoda was solicited by Sturgeon in early July, 2016 to join ContinuaRx. Shimoda resigned from PharMerica on July 29, 2016, and joined ContinuaRx on August 1, 2016, as the Director of Pharmacy Operations. Shimoda's role as the Director of Pharmacy Operations at ContinuaRx is substantially similar to the role he held at PharMerica and Millennium. F-F ¶¶ 25 & 26; Def. CSMF ¶ 54.

ContinuaRx contends that neither Gottlieb or Shimoda has engaged or participated in its marketing strategies or customer recruitment. Def. CSMF ¶ 60. Their roles are limited to the clinical and operational services of ContinuaRx. *Id.* PharMerica, however, contends that ContinuaRx uses Gottlieb's and Shimoda's names in its marketing materials used to solicit customers, and, in their present roles with ContinuaRx, Gottlieb and Shimoda are servicing former PharMerica customers. Pharm. Resp. ¶ 60. PharMerica, further, contends that Gottlieb solicited its customers on behalf of ContinuaRx both before and after leaving PharMerica in emails in which he provided ways for the customers to contact him, indicated he hoped to work with them again, and referencing meetings he had with such customers. Pharm. Resp. ¶ 56. Aside from Gottlieb's emails, PharMerica has no evidence that either Gottlieb or Shimoda directly solicited PharMerica customers on behalf of ContinuaRx.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in

dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV. DISCUSSION**

With the dismissal of all claims against Shimoda and Gottlieb, the only remaining counts against ContinuaRx and Sturgeon are allegations of: misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and the federal Defend Trade Secrets Act ("DTSA") (Counts IV and V); tortious interference with contractual and business relationships (Count VI); unfair competition (Count VII); conspiracy (Count VIII); and breach of the duty of loyalty (Count IX), against Sturgeon only.

A. Misappropriation of Trade Secrets

The DTSA creates a private right of action for the misappropriation of trade secrets. 18 U.S.C. § 1836(b)(1). The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the consent of the owner. 18 U.S.C. §§ 1839(5)(A)-(B).

In order to prevail on a misappropriation of trade secrets claim under the PUTSA, a plaintiff must show (1) the existence of a trade secret; (2) the communication of the trade secret pursuant to a confidential relationship; (3) the use or threatened use of the trade secret in violation of that confidence; and (4) harm. *See* 12 PA. CONS. STAT. ANN. § 5303(a); *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1232 (Pa. Super.1989).

Although the DTSA and the PUTSA use different wording to define a trade secret, they essentially protect the same type of information. Both define a trade secret as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its

7

disclosure or use. 18 U.S.C. § 1839(3); 12 PA. CONS. STAT. ANN. § 5302; *see also Teva Pharms. USA, Inc. v. Sandhu*, 2018 U.S. Dist. LEXIS 14470 at *22.

To determine a trade secret, courts consider factors including: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated legitimately by others. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010); *see also Nova Chems., Inc. v. Sekisui Plastics Co., Ltd.*, 579 F.3d 319, 327 (3d Cir. 2009). It is axiomatic that, to warrant legal protection, a trade secret must be, in fact, a secret. "Matters which are fully disclosed by a marketed product" and that can be reverse engineered do not qualify as trade secrets. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985).

ContinuaRx contends that PharMerica has failed to show that it has protectable trade secrets. PharMerica contends that "it has presented [substantial] evidence that its confidential and proprietary information constitutes protectable trade secrets. . . [and identifies] its service methods, processes, capabilities, strengths and weaknesses, market opportunities, marketing strategies, prospective and current customers, customer preferences, customer, concerns, cost and pricing information, and business strategies as trade secrets." PharMerica Brief pp. 18-19. PharMerica further argues that it sets competitive prices with private pay consumers and does not share this information with its competitors. *Id.* p. 19. PharMerica claims trade secrets in the "libraries of customer information and preferences, including customer financial preferences" it developed that are not publically available, as well as in work flows, practices, delivery methods,

8

and services models, which it has developed to be competitive in the industry. *Id.* PharMerica further claims trade secrets arising from its marketing plans, software, training programs, and customer service metrics, along with documents created to assist PharMerica's employees with doing their jobs. *Id.*

PharMerica, however, admits that:

1. There is nothing trade secret or confidential about the customers in this market. Def. CSMF ¶ 36;

2. Potential customers are a finite list and include any service provider, facility, or institution with a need for pharmaceuticals. Def. CSMF ¶ 37;

3. Pricing and margins in the long-term care pharmacy marketplace are largely fixed by Medicare and Medicaid reimbursement rates. Def. CSMF ¶ 32;

4. Nearly all pharmacies follow state Medicaid comparable reimbursement pricing strategies, which are publicly available and heavily regulated, for prescription medications to ensure that pricing to the customer is consistent with reimbursement from the state Medicaid program and federal mandates. Def. CSMF ¶ 33; Pharm. Resp. ¶ 33;

5. Reimbursement rates for pharmacy services under Medicaid are determined on a state-by-state basis subject to review for Centers for Medicare and Medicaid Services and applicable federal law. Def. CSMF ¶ 34;

6. It trains customers on software developed by PharMerica without prohibition against customer disclosure. Def. App. Ex. A, pp 97-98.

Considering the facts in the light most favorable to PharMerica, the Court finds that PharMerica may have certain "trade secrets" that deserve protection, but in this instance has failed to identify a single quality, attribute, or feature of any of these alleged trade secrets described in a general sense above. Moreover, PharMerica has failed to direct this Court to any evidence that Sturgeon and/or ContinuaRx have improperly acquired, disclosed, used or threatened to use any specific trade secret. The Court finds no good cause, therefore, to deviate from its Findings and Conclusions regarding PharMerica's request for injunctive relief.

Accordingly, Defendants' Motion for Summary Judgment on PharMerica's claims of misappropriation of trade secrets under PUTSA and DTSA will be granted.

B. <u>Tortious Interference with Contractual and Business Relationships</u>

PharMerica contends that ContinuaRx and Sturgeon have interfered with both: (1) Gottlieb's and Shimoda's employment contracts by causing them to violate the restrictive covenants contained in the agreements, and (2) PharMerica's customer agreements and relationships.

Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (quoting *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)).

As part of his employment with PharMerica, Gottlieb executed a Nondisclosure and Non-Solicitation Agreement with PharMerica on December 11, 2014, which in pertinent part states:

> <u>Competition</u>. Employee acknowledges that PharMerica will suffer irreparable injury if Employee competes with PharMerica. Employee agrees that, during Employee's employment and for a period of twelve (12) months thereafter, Employee **shall not**:
>
>> (i) directly or indirectly, divert business from PharMerica or solicit, accept, or procure business from, divert the business of, or attempt to convert to other methods of using the same or similar services or products as are provided by PharMerica, any customer of PharMerica;

> (ii) interfere, in any manner, with PharMerica's Customer Relationships;
>
> (iii) directly or indirectly, solicit for employment, employ or otherwise engage the services of . . . an individual . . . employed by PharMerica . . .

*See* F-F ¶ 10. The Nondisclosure and Non-Solicitation Agreement Gottlieb entered into with PharMerica covered much of the same subject matter covered in the "Confidentiality, Copyright and other Intellectual Property Assignment, and Restrictive Covenant Agreement" and in the "Protection of Interest and Non-Disclosure Agreement" that Gottlieb entered into with Millennium, including but not limited to, Confidential Information, Trade Secrets, Competition and Non-Solicitation. F-F ¶ 11. While the Protection of Interest and Non-Disclosure Agreement Gottlieb entered into with Millennium contained a non-competition requirement that restricted Gottlieb's employment with a competitor, PharMerica's Nondisclosure and Non-Solicitation Agreement does not. F-F ¶ 12. Further, the PharMerica Agreement contained an integration clause that read as follows:

> This Agreement sets forth all the promises, covenants, agreements, conditions and understandings between the parties hereto as to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements, understandings, inducements or conditions, expressed or implied, oral or written, except as herein contained. Nothing in this Agreement shall be deemed to constitute an agreement by PharMerica to employ Employee for any period of time.

See C-L ¶ 5. This clause is significant because an "integration clause stating the parties intend the writing to represent their entire agreement is a 'clear sign' the writing 'expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). Once a writing expresses the parties' entire agreement, the parol evidence rule applies to exclude evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract that would alter or contradict the terms of the written agreement. *Id.* at 436-437.

As part of his employment with PharMerica, Shimoda also executed a Nondisclosure and Non-Solicitation Agreement on December 15, 2014, that was essentially the same as the Agreement signed by Gottlieb. *See* F-F ¶ 13. Gottlieb and Shimoda also executed Confidentiality Agreements with PharMerica which required that they not "use, disseminate, disclose or publish, directly or indirectly, any Confidential Information obtained while in PharMerica's employ," and required that they return any such material in their possession upon termination of employment with PharMerica. F-F ¶ 13.

PharMerica argues that while Gottlieb's Millennium and PharMerica Agreements contain similar non-disclosure and non-solicit provisions, Gottlieb's PharMerica Agreement does not contain a true non-competition provision similar to that contained in his Millennium Agreement. The non-compete provisions in the Millennium Agreements, therefore, are valid and enforceable because they cover a different subject matter, and were not integrated into the PharMerica Agreement. Defendants intentionally interfered with Gottlieb's employment agreement by hiring him knowing he was subject to a non-compete agreement.

As before, the Court disagrees. The Millennium and the PharMerica Agreements cover the same subject matter, i.e. noncompetition, post-employment obligations and restrictions on the use of proprietary information. Though the PharMerica Agreement does not restrict Gottlieb's employment with a competing entity, it supersedes the noncompetition clauses contained in the Millennium Agreements. The Millennium Agreements, therefore, cannot be used to alter the PharMerica Agreement entered into in 2014. Moreover, PharMerica admitted[2] that it made a decision to have some, but not all, of the Millennium employees sign non-compete agreements

---

[2] Suresh Vishnubhatla ("Suresh"), Vice President of PharMerica's Long-term Care Operations, testified that when PharMerica started on-boarding some of the former Millennium employees, PharMerica made a decision to have some of those employees sign non-compete

based upon certain criteria. Gottlieb's PharMerica Agreement is controlling in this instance, and it does not restrict his post-termination employment.

Shimoda never signed an employment agreement with Millennium, therefore, the Nondisclosure and Non-Solicitation Agreement he executed with PharMerica on December 15, 2014, is controlling in this matter. The agreement does not restrict Shimoda's post-termination employment. Accordingly, the mere hiring of Gottlieb and Shimoda was not an intentional interference of the PharMerica employment agreements.

PharMerica also contends that Defendants are intentionally interfering with its employment contracts by using Gottlieb and Shimoda in the solicitation of PharMerica's customers, and by causing Gottlieb and Shimoda to disclose PharMerica's confidential information. In support, PharMerica relies on the following circumstantial evidence: (1) both Gottlieb and Shimoda concealed their future employment with ContinuaRx before leaving PharMerica; (2) Gottlieb asked others to keep his new employment secret; (3) Gottlieb had PharMerica's confidential and proprietary information on his personal computer after he left PharMerica; and (4) Gottlieb and Shimoda are performing essentially identical tasks for ContinuaRx leading to the logical conclusion that disclosure of this confidential information is therefore likely. PharMerica concludes that, "it would not be possible for ContinuaRx – a small, start-up pharmacy with no track record, to [contract with and service former PharMerica customers] without the use of PharMerica's confidential information, trade secrets, and goodwill." PharMerica Response Brief, pp. 2, 10-11.

---

agreements based upon certain criteria including but not limited to, whether the employees were management, had responsibilities that gave them access to sensitive information, or would be performing job functions PharMerica considered critical.  F-F ¶ 13.

PharMerica's conclusion is speculative and unsupported by sufficient cognizable evidence. PharMerica cannot rely upon unsupported assertions, conclusory allegations, or mere suspicions to defeat summary judgment. Even looking at the evidence in the light most favorable to PharMerica, the Court finds no support for the contention that ContinuaRx induced Gottlieb and Shimoda to breach their nondisclosure agreements.

Similarly, the Court is unable to find support regarding PharMerica's claim that Gottlieb and Shimoda are directly or indirectly soliciting PharMerica's customers for ContinuaRx. PharMerica argues that not only has ContinuaRx "prominently published Gottlieb's and Shimoda's names on their marketing materials, but now Gottlieb and Shimoda are preparing to service and are actually servicing former PharMerica clients, an aspect of the business which PharMerica has established is essential in this industry to establishing and keeping customer relationships and accounts."

The word "solicitation" is not defined in any of the agreements at issue. "Long established principles of contract interpretation require the court to construe such unclarities in post-employment restrictive covenants against their drafter." *Diodato v. Wells Fargo Ins. Servs.*, 44 F. Supp. 3d 541, 575 (M.D. Pa. 2014); *Colorcon v. Lewis*, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011) (noting that restrictive covenants are "strictly construed against the employer" and "any ambiguous language in a contract is construed against the drafter"). Courts interpreting the undefined term "solicitation" in a restrictive covenant have found that an announcement of a change of employment is not actionable solicitation. In *Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514 (E.D. Pa. 2010), the Court analyzed the meaning of the term "solicitation" in a restrictive covenant. In doing so, the court looked to relevant out-of-state authority, noting:

> Aetna concerned an agreement where the defendant may not "solicit, serve and/or cater to any of the customers of the [plaintiff] Company served by him." Despite the additional language of "serve and/or cater" modifying solicit, the court still held that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee.

Id. at 520–521.

In the instant matter, merely including Gottlieb's and Shimoda's names in marketing material is not a direct or indirect solicitation in violation of the employment agreements. Moreover, Gottlieb's emails do not rise to the level of direct solicitation. Gottlieb's emails did not invite or solicit the clients/customers to move their business away from PharMerica and to ContinuaRx. Nor did such emails disclose any confidential information or trade secrets of PharMerica.

It is well-settled under Pennsylvania law that a restrictive covenant which prohibits a former employee from accepting business from or servicing clients of a former employer who unilaterally seek such service is overbroad and void. See *Diodato v. Wells Fargo Ins. Servs.*, 44 F. Supp. 3d 541, 570 (M.D. Pa 2014). Here, there is no such restriction in either Gottlieb's or Shimoda's agreements with PharMerica. Further, the non-solicitation clause in the agreement cannot be used to prevent former employees from servicing clients who move their business on their own volition.

Defendants admit they are targeting customers in the skilled nursing facility segment of the highly competitive pharmacy services industry and will compete aggressively with PharMerica for such customers in Pennsylvania, Maryland, Virginia, Delaware and Washington D.C. *See* F-F ¶ 28. There is no evidence, however, that anyone other than Sturgeon, who is under no solicitation impediment, is soliciting current and former customers of PharMerica. Moreover, Pennsylvania has adopted section 768 of the RESTATEMENT (SECOND) OF TORTS,

which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with certain contractual relationships. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d at 215 (citing *Gilbert v. Otterson*, 550 A.2d 550, 554 (Pa. Super. 1988).

> In *Acumed*, the Third Circuit stated:
>
> The law necessarily recognizes this privilege because if more than one party seeks to sell similar products to prospective purchasers, both necessarily are interfering with the other's attempt to do the same thing. Moreover, even if an entity has an existing contractual relationship with another entity, a stranger to the relationship must be privileged to seek to replace one of the entities lest competition be stifled. Thus, under section 768: "[o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other."

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 768). PharMerica argues that ContinuaRx is not privileged because its actions were wrongful or improper. The wrongful means element, however, requires that a plaintiff, to be successful in a tortious interference action, demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d at 215.

This Court previously ruled that neither Sturgeon nor ContinuaRx are subject to any type of contract or obligation that would restrict or prevent them from operating a competitive business venture. Moreover, PharMerica has failed to produce any evidence that Sturgeon and/or ContinuaRx used wrongful means in securing customers that would support a finding that the privilege does not apply. Accordingly, the Court finds that PharMerica's tortious interference claim is not supported by the record evidence, and summary judgment will be granted in favor of Defendants.

C. <u>Unfair Competition</u>

In *Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.*, 411 Pa. 383 (1963), the Pennsylvania Supreme Court noted that "unfair competition, as known to the common law, is a limited concept. Primarily, and strictly, it relates to the palming off of one's goods as those of a rival trader." *Id.* at 391 (quoting *A.L. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 531 (1935)). However, the court further explained: "In recent years its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation." *Id.* Although no Pennsylvania appellate court has formally recognized the common law tort of unfair competition, several lower state courts have, relying on the RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 to define its elements. *See Teva Pharms. USA, Inc. v. Sandhu*, 2018 U.S. Dist. LEXIS 14470, *31-33 (E.D. Pa. January 30, 2018) (citations omitted)**.** The Third Circuit has predicted that the Pennsylvania Supreme Court would adopt the Restatement. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d at 227 & n.29.

The Restatement recognizes several specific categories of commercial behavior that give rise to a claim of unfair competition, including: (1) deceptive marketing, (2) infringement of trademark and other protectable intellectual property rights, (3) misappropriation of trade secrets and other intangible trade values, and (4) acts or practices that are actionable under federal or state statutes. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 (1995); *see also Giordano v. Claudio*, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010). Unfair competition may also apply where there is evidence of "tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (USA) v. Globus Med., Inc.*, 2005 U.S. Dist. LEXIS 19962, *24-25 (E.D. Pa. Sept. 24, 2005).

This Court has already found no merit to PharMerica's claim of tortious interference with contract and that Defendants have not unlawfully used PharMerica's confidential information.

17

Moreover, PharMerica has offered no evidence that Defendant's improperly induced Gottlieb and Shimoda to leave their employment or that the hiring of Gottlieb and Shimoda has harmed its ability to effectively compete in the marketplace. Accordingly, PharMerica's claim of unfair competition fails as a matter of law.

    D.    <u>Civil Conspiracy</u>

PharMerica contends that Sturgeon, Gottlieb, and Shimoda conspired and agreed to misappropriate PharMerica's confidential and trade secret information, solicit and raid PharMerica's customers and employees, and divert business from PharMerica in order to start a competing pharmacy services company. Complaint ¶ 161.

The essential elements of a claim for civil conspiracy under Pennsylvania law are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage. *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008)(citing *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004)). In addition, absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000).

Because PharMerica has failed to establish the claims upon which its civil conspiracy is based, such claim fails as a matter of law.

    E.    <u>Breach of Duty of Loyalty</u>

PharMerica's final claim is that Sturgeon breached a duty of loyalty to PharMerica by misappropriating trade secrets and "raiding" PharMerica's employees. In order to establish its claim for breach of a duty of loyalty, PharMerica must show that Sturgeon unlawfully misappropriated trade secrets and/or raided it employees while still employed by PharMerica.

18

*PTSI, Inc. v. Haley*, 71 A.3d 304, 309 (Pa. Super. 2013). Pennsylvania courts have consistently held that "[a]fter the termination of [an] agency, in the absence of a restrictive agreement, the agent can properly compete with this principal as to matters for which he has been employed." *Spring Steels, Inc. v. Molloy*,162 A..2d 370,372 (Pa. 1960).

PharMerica does not allege and has not produced evidence to support a claim that Sturgeon acted against PharMerica's interests prior to the May 15, 2016, expiration of Sturgeon's restrictive covenant. Because there are no allegations or evidence that Sturgeon committed any acts that could even arguably be construed as a breach of her duty of loyalty while employed by PharMerica, this claim fails as a matter of law.

**V.     CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment shall be granted. An appropriate Order follows.

<pre>                                        s/ DAVID STEWART CERCONE
                                        David Stewart Cercone
                                        United States District Judge
</pre>

cc:     David J. Porter, Esquire
        Deborah S. Brenneman, Esquire
        George B. Musekamp, Esquire
        Tiffany A. Jenca, Esquire
        Manning J. O'Connor, II, Esquire
        Mark Stadler, Esquire
        Douglas Michael Grimsley, Esquire
        Steven W. Zoffer, Esquire
        John R. O'Keefe , Jr., Esquire
        Kenneth S. Kornacki, Esquire

        (*Via CM/ECF Electronic Mail*)